UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RONY JACINTO VICENTE (A-Number: 216-578-787),

Petitioner,

v.

WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY,

Respondent.

Case No.  1:26-cv-0577-DC-JDP

FINDINGS AND RECOMMENDATIONS

Petitioner Rony Jacinto Vicente entered the United States in 2019, and, after serving a prison sentence for involuntary manslaughter, he was arrested and detained by ICE in 2025. Petitioner seeks a writ of habeas corpus under 28 U.S.C. § 2241, claiming that his detention without a bond hearing violates the Fifth Amendment.  For the reasons outlined below, I recommend that the petition for writ of habeas corpus be denied.

**Background**

On January 8, 2019, petitioner entered the United States, arriving from Guatemala, and he was issued a Notice to Appear.  ECF No. 13-1 at 3.  On June 25, 2019, petitioner filed an asylum application, which was denied. *Id*. at 4.  On June 25, 2024, petitioner was convicted of involuntary manslaughter in violation of California Penal Code § 192(b), and he was sentenced to four years in prison.  ECF No. 13-3 at 4.

1

On August 19, 2025, following petitioner's release from prison, he was detained by ICE in Oakland, California.  ECF No. 13-1 at 2-3.  There is no information in the record regarding the status of his removal proceedings.

**Procedural History**

On January 23, 2026, petitioner, initially proceeding pro se, filed a petition for writ of habeas corpus.  ECF No. 1.  The court determined that the interests of justice required the appointment of counsel, and appointed counsel appeared on February 5, 2026.  ECF Nos. 6 & 10.  On March 12, 2026, respondent filed an answer to the petition.  ECF No. 13.  Petitioner filed a reply eight days thereafter.  ECF No. 14.

**Legal Standard**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law.  *See* 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Petitioner claims that his detention, absent a bond hearing, violates his Fifth Amendment Due Process rights.  ECF No. 1 at 16.  Respondent counters that the petition should be dismissed because petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c), which allows the Attorney General to detain and then remove any noncitizen who has committed certain qualifying crimes.  ECF No. 13 at 1.

Under section 1226(c)(1)(E), the attorney general "shall take into custody" any noncitizen who "is charged with, is arrested for, is convicted of, admits having committed, or admits

committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person."[1]  8 U.S.C. § 1226(c)(1)(E)(ii).  As noted, petitioner was convicted of involuntary manslaughter, which is a crime that resulted in death to another person.  *See* ECF No. 13-3 at 4; Cal. Penal Code § 192(b).  Consequently, petitioner is subject to mandatory detention under section 1226(c)(1)(E).[2]

However, while petitioner's detention is mandated by statute, that does not resolve his claim that his detention violates the Fifth Amendment.[3]  *See* ECF No. 1 at 16.  Respondent does not address petitioner's due process claim.  *See* ECF No. 13.  At present, there is no binding authority that squarely resolves this claim.  In *Zadvydas*, the Supreme Court addressed a challenge to prolonged detention in a different context—under 8 U.S.C. § 1231(a)(6)—and held:

> We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months.  Consequently, for the sake of uniform administration in the federal courts, we recognize that period.  After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.

533 U.S. at 701 (internal quotation marks and citation omitted).

However, in *Demore v. Kim*, the Supreme Court rejected a due process challenge to section 1226(c) and distinguished *Zadvydas* because, unlike indefinite detention pending removal under section 1231(a)(6), mandatory detention under section 1226(c) has a "definite termination point," i.e., the conclusion of removal proceedings.  538 U.S. 510, 529 (2003).  The Court held

---

[1] This statutory provision also requires that the noncitizen be "inadmissible" under 8 U.S.C. §§ 1182(a)(6)(A), (6)(C), or (7).  8 U.S.C. § 1226(c)(1)(E)(i).  Because petitioner is "present in the United States without being admitted or paroled," he is "inadmissible" under § 1182(a)(6)(A).  *See* 8 U.S.C. § 1182(a)(6)(A)(i).

[2] In light of this conclusion, I find it unnecessary to address the parties' arguments regarding the application of section 1226(c)(1)(A).  *See* ECF No. 13 at 1-2; ECF No. 14 at 2-3.

[3] Respondent does not contest that petitioner has a protected liberty interest under the Due Process Clause.  In light of this apparent concession and the fact that many courts in this Circuit have found that noncitizens acquire a liberty interest in their continued release, I find it unnecessary to address this issue.  *See, e.g.*, *Labrador-Prato v. Noem*, 1:25-cv-1598-DC-SCR, 2025 WL 3458802, at *4 (E.D. Cal. Dec. 2, 2025).

that "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Id*. at 531.

After *Demore*, the Court of Appeals held that mandatory detention under section 1226(c) has an implicit six-month limit, at which time the government must justify continued detention by clear and convincing evidence at a bond hearing. *Rodriguez v. Robbins*, 804 F.3d 1060, 1078-81 (9th Cir. 2015). But the Supreme Court reversed, finding that this statutory provision cannot reasonably be read to limit detention to six months. *Jennings v. Rodriguez*, 583 U.S. 281, 303-306 (2018). As the Court of Appeals noted on remand, however, the Supreme Court "declined to reach the constitutional question" and "instead chose to answer only the question whether the statutory text itself included a limit on prolonged detention or a requirement of individual bond hearings." *Rodriguez v. Marin*, 909 F.3d 252, 255 (9th Cir. 2018). "Since the *Rodriguez* remand, there has been a dearth of guidance regarding the point at which an individual's continued mandatory detention under Section 1226(c) becomes unconstitutional." *Lopez v. Garland*, 631 F. Supp. 3d 870, 876 (E.D. Cal. 2022) (internal quotation marks and citation omitted).

Because neither the Court of Appeals nor the Supreme Court have provided guidance explaining when a noncitizen's mandatory detention under section 1226(c) becomes unconstitutional, courts in this Circuit have used varied tests to determine whether due process requires a bond hearing. The three main tests are: (1) the general due process assessment under *Mathews v. Eldridge*, 424 U.S. 319 (1976); (2) the test announced in *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019); and (3) the test announced in *Lopez*, 631 F. Supp. 3d at 879, where the court determined whether prolonged mandatory detention under section 1226(c) violates the Due Process Clause by considering three factors: "the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government."[4]

---

[4] The *Lopez* test utilizes three factors from the *Banda* test. *Lopez*, 631 F. Supp. 3d at 877-79. In *Banda*, to determine whether prolonged mandatory detention under section 1225(b) violates the Due Process Clause, the court also considered "the conditions of detention" and "the likelihood that the removal proceedings will result in a final order of removal." *Banda*, 385 F. Supp. 3d at 1118 (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858-59 (D. Minn. 2019)).

Petitioner does not address the various tests and instead defaults to an assessment under *Mathews*. *See* ECF No. 1 at 10-11; ECF No. 14 at 4. In the absence of binding authority instructing the court which test to employ, I analyze petitioner's claim under the *Lopez* test because that case dealt with the same statutory authority under which petitioner is detained.[5] Moreover, "[w]hile the *Mathews* factors may be well-suited to determining whether due process requires a second bond hearing, they are not particularly probative of whether prolonged mandatory detention has become unreasonable in a particular case." *Banda*, 385 F. Supp. 3d at 1118. Similarly, the two factors employed in *Banda* but not *Lopez*—the conditions of detention and the likelihood that the removal proceedings will result in a final order of removal—"are not particularly suited to assisting the Court in determining whether detention has become unreasonable and due process requires a bond hearing." *Lopez*, 631 F. Supp. 3d at 879. Accordingly, petitioner's claim is analyzed under the three factors articulated in *Lopez*: (1) the total length of detention to date; (2) the likely duration of future detention; and (3) the delays in proceedings caused by petitioner and the government. I consider each factor in turn.

**I.      Total Length of Detention**

Courts have found that this factor weighs in the petitioner's favor where detention has lasted at least one year. *See, e.g.*, *Baishymyrov v. Warden of Golden State Annex Det. Facility*, No. 1:25-cv-1658-DMC, 2026 WL 145644, at *7 (E.D. Cal. Jan. 20, 2026). "In general, as detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing." *Gonzalez v. Bonnar*, No. 18-cv-5321-JSC, 2019 WL 330906, at *3 (N.D. Cal. Jan. 25, 2019) (collecting cases) (cleaned up).

Here, petitioner has been detained for eight months. Accordingly, because petitioner has been detained for less than one year, this factor weighs in respondent's favor.

---

[5] If I analyzed petitioner's claim under *Mathews*, I still would conclude that he is not entitled to a bond hearing. While petitioner has a private interest that is affected by detention, the probable value of a bond hearing is low because petitioner does not contest that he was convicted of involuntary manslaughter, and the government has an interest—recognized by section 1226(c)—in detaining petitioner without a bond hearing. *See Mathews*, 424 U.S. at 335.

## II.    Likely Duration of Future Detention

The court must next determine "how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings— including administrative and judicial appeals." *Banda*, 385 F. Supp. 3d at 1119 (cleaned up). Though petitioner does not raise the issue, some courts have found that the possibility of an appeal warrants weighing this factor in the petitioner's favor. *See, e.g.*, *Arido-Sorro v. Garland*, No. 23-cv-0842-PHX-JAT, 2024 WL 4393264, at *4 (D. Ariz. Sept. 5, 2024), *report and recommendation adopted*, 2024 WL 4834413 ("Courts have recognized that the possibility of prolonged appeals weighs in favor of finding that continued detention without a bond hearing violates due process."). While there is no evidence in the record to determine the likelihood of such appeal, or how long such process would take, petitioner is entitled to some deference based on the prospect of an appeal increasing the length of the removal proceedings.

Accordingly, I find that the second factor weighs in favor of petitioner, although only slightly given the lack of evidence or argument presented by petitioner.

## III.    Delays in Proceedings Caused by Petitioner and the Government

Lastly, the court must consider the nature and extent of delays caused by petitioner and the government. Because there is no information in the record regarding any delays in petitioner's proceedings, this factor is neutral.

On balance, while the likely duration of future detention weighs slightly in favor of petitioner, that factor is outweighed by the total length of detention, "which is the most important factor." *See Banda*, 385 F. Supp. 3d at 1118. Accordingly, a weighing of the *Lopez* factors supports a finding that petitioner's detention does not violate his Fifth Amendment Due Process rights.

## Conclusion

Based on the foregoing, I recommend that petitioner's writ of habeas corpus be denied.

Accordingly, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be DENIED.

2. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within fourteen days of service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:     April 30, 2026     _____

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE